# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF TEXAS

### HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

DEC 09 2025

Nathan Ochsner, Clerk of Court

| | | |
|---|---|---|
| YUCOB RYLANDER,<br>Plaintiff,<br><br>v.<br><br>MARY ELIZONDO FRAZIER,<br>individually and in her official capacity;<br>ARCHER SYSTEMS LLC;<br>BRENT COON & ASSOCIATES;<br>LEGACY COMMUNITY HEALTH<br>SERVICES, INC. d/b/a LEGACY CLINIC<br>– HIRAM CLARKE;<br>KATELIN CARDENAS, individually and<br>in her capacity as an employee of Legacy<br>Clinic – Hiram Clarke;<br>SPENCER FANE LLP, individually and<br>in its official capacity;<br>COLIN PETER GOODMAN, individually<br>and in his official capacity;<br>ELIZABETH DALE BURRUS,<br>individually and in her official capacity;<br>ROSS SEARS II, individually and in his<br>official capacity;<br>JOHN DOES 1–10,<br>Defendants. | § § § § § § § § § § § § § § § § § § § § § § § | Civil Action No. 4:25-cv-05323<br>Assigned to the Hon. Alfred H. Bennett<br><br><br>JURY DEMANDED |

PLAINTIFF'S 2nd AMENDED COMPLAINT FOR RICO, CONSTITUTIONAL
VIOLATIONS, DEFAMATION, FRAUD, ABUSE OF PROCESS, CIVIL
CONSPIRACY, IIED AND RELATED CLAIMS

## I. INTRODUCTION

1.   This action arises from a coordinated, multi-state scheme involving attorneys,
law firms, corporate entities, and private individuals who jointly engaged in fraud,
defamation, obstruction of justice, abuse of process, and constitutional violations
across Texas, Washington, and New York. At the center of this enterprise was the
creation, circulation, publication, and interstate deployment of **fraudulent and void
judicial documents**, including a prematurely issued Wharton County "vexatious
litigant" order fabricated before any hearing occurred and without jurisdiction.

2.   Defendants used these void documents—and knowingly false litigation
summaries derived from them—to obstruct Plaintiff's access to the courts, interfere
with federal and state judicial proceedings, manipulate legal outcomes, damage
Plaintiff's credibility, and derail unrelated actions pending in multiple jurisdictions.
Their conduct constitutes a continuous pattern of racketeering activity under **18
U.S.C. §§ 1961–1968**, involving mail fraud, wire fraud, obstruction of justice,
witness tampering, and use of the mails and wires in interstate commerce,
including CM/ECF transmissions, email communications, and pleadings referencing
Plaintiff's New York and Washington cases.

   a. Defendants' coordinated conduct satisfies the "pattern" requirement
articulated in *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989),
where the Court held:

"To establish a RICO pattern it must also be shown that the predicates themselves
amount to, or that they otherwise constitute a threat of, continuing racketeering

2

activity. It is this factor of continuity plus relationship which combines to produce a pattern."

And further:

"'Relatedness' of the predicate acts may be established by showing that the acts have the same or similar purposes, results, participants, victims, or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240.

Defendants' actions meet this standard with precision.

3.    Defendants further deprived Plaintiff of constitutional rights under **42 U.S.C. § 1983** by engaging in joint action with a person clothed with state authority—specifically through the creation, transmission, and use of documents purporting to be judicial orders. As the Supreme Court held in *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980): *"Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983."* This principle applies squarely here.

4.    In addition, Defendants conspired to deter, obstruct, and retaliate against Plaintiff for initiating and participating in federal proceedings, violating **42 U.S.C. § 1985(2)**. Their actions included manufacturing false judicial records, misrepresenting Plaintiff's filings in other jurisdictions, and weaponizing void and fraudulent documents to influence proceedings in the Southern District of Texas, the Southern District of New York, and King County Superior Court in Washington.

5.    Defendants also defamed Plaintiff by presenting **void Texas judicial documents**—including the Wharton QSF document, void Notice of Hearing, and void ab initio Transfer Order—as if they were legitimate judicial orders, and by implying that Plaintiff's efforts to challenge these void documents were themselves evidence of frivolous litigation.

5.1    These statements constitute **defamation per se** because they falsely accuse Plaintiff of:

    a.   criminal conduct (fraud, dishonesty, abuse of process and extortion);

    b.   conduct incompatible with his rights and obligations as a litigant;

    c.   filing frivolous and abusive lawsuits;

    d.   engaging in bad-faith litigation tactics;

    e.   misconduct related to judicial processes.

Accusing a person of criminality, dishonesty, or abuse of legal process is defamatory per se under Texas, Washington and New York law.

6.    Plaintiff suffered severe, multi-jurisdictional injury, including reputational harm, financial losses, procedural prejudice, emotional distress, and interference with his right of access to the courts. Pursuant to **18 U.S.C. § 1964(c)**, Plaintiff seeks treble damages, punitive damages, compensatory damages, declaratory relief, and injunctive relief prohibiting further dissemination or use of the fraudulent Wharton County order.

7.    As set forth in the Verified Affidavit of Damages, Plaintiff seeks **$600,000,000.00** in total relief, reflecting treble RICO damages, punitive damages, compensatory losses, and ongoing publication harm caused by the Defendants' unlawful enterprise.

8.    This Complaint is filed in conformity with the November 2025 amendments to the Southern District of Texas CM/ECF procedures, acknowledging the extraordinary volume of documentary evidence, the financial burden on Plaintiff, and the multi-state scope of the Defendants' coordinated misconduct.

Plaintiff now brings this action to restore judicial integrity, remedy ongoing harm, and prevent further misuse of fraudulent judicial documents.

## II. JURISDICTION AND VENUE

9.   This Court has subject-matter jurisdiction pursuant to:

a. 28 U.S.C. § 1331 — federal-question jurisdiction;

b. 18 U.S.C. § 1964(c) — civil RICO jurisdiction;

c. 28 U.S.C. § 1343(a)(3)–(4) — jurisdiction over civil-rights claims under 42 U.S.C. §§ 1983 and 1985(2);

d. 28 U.S.C. § 1367(a) — supplemental jurisdiction over related state-law claims including fraud, defamation, civil conspiracy, abuse of process, Intentional Infliction of Emotional Distress (IIED), and other business torts.

10.   Venue is proper in this District under **28 U.S.C. § 1391(b)** because:

a. A substantial part of the events or omissions giving rise to the claims occurred in this District;

b. Multiple Defendants reside, maintain offices, or conduct business in this District;

c. The fraudulent Wharton County judicial documents that form the nucleus of the racketeering enterprise originated in Texas and were deployed in federal proceedings within the Southern District of Texas;

d. Defendants' coordinated actions caused injury to Plaintiff within this District.

11.   The interstate-commerce requirement for civil RICO is satisfied. RICO requires only that the enterprise's activities "affect interstate commerce." Plaintiff's allegations satisfy this standard because:

a. Defendants used interstate email and CM/ECF systems—electronic communications which, as a matter of law, travel through interstate servers, thereby constituting use of the wires in interstate commerce;

b. Defendants weaponized Plaintiff's filings from **New York** (SDNY Case No. 1:25-cv-04377) and **Washington** (King County Case No. 25-2-27641-4 SEA) to obstruct litigation and manipulate judicial proceedings in Texas;

c. Defendants' misrepresentations were directed at judicial processes in **multiple**

**states**, creating interstate impact even though certain fraudulent documents remained physically within Texas;

d. The enterprise sought to influence federal court outcomes in more than one jurisdiction, affecting interstate legal rights and interstate channels of communication.

Thus, the enterprise operated across state lines and used interstate instrumentalities, satisfying RICO's jurisdictional element.

---

## III. PARTIES

### A. Plaintiff

12.    **Yucob Rylander** is a natural person residing in Houston, Texas. Plaintiff has been the target of a coordinated, multi-state fraudulent scheme involving void judicial documents, defamatory publications, and obstruction of judicial proceedings in Texas, Washington, and New York.

---

### B. Defendants

1. Mary Elizondo Frazier

13.    Defendant **Mary Elizondo Frazier** is a Texas attorney who participated in the creation, transmission, and circulation of fraudulent documents purporting to be judicial orders—including the prematurely issued and jurisdictionally void Wharton County order. Frazier acted jointly with private actors under color of state law for purposes of 42 U.S.C. § 1983, as defined in *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980).

## 2. Archer Systems LLC

14.    **Archer Systems LLC** coordinated with Frazier and other Defendants to produce, distribute, and repeatedly republish fraudulent litigation summaries and void judicial documents. The architects of the entire Rico claim. It was Frazier's connections to the Court official both in Harris county – which granted the unlawful transfer and Wharton the QSF (Bank Account) which Granted and published the fraudulent order being used 3 days before the hearing for the motion and a full day *before* the rubber-stamped proposed order was filed into the efileTX system.

## 3. Brent Coon & Associates (BCA)

15.    **Brent Coon & Associates** is a Texas law firm that jointly participated in the enterprise by disseminating fraudulent documents, adopting void orders into federal filings, admittedly aiming to disrupt Plaintiff's out-of-state cases, and filing coordinated pleadings intended to obstruct Plaintiff's enforcement of his settlement rights. Defendant BCA filed a formal **Joinder** supporting ITC's vexatious-litigant motion, even though BCA was in active default in a separate matter and had no legal basis to join the motion. BCA's participation demonstrates coordinated enterprise behavior, not independent legal strategy.

## 4. Ross Sears II

16.    Defendant **Ross Sears II** is a Texas attorney who represented Brent Coon & Associates and directly furthered the enterprise's fraudulent objectives. Sears filed sanctions motions against Plaintiff, falsely characterizing Plaintiff's filings as "frivolous" to shield BCA from liability for theft and conversion. Sears filed documents accusing Plaintiff of "extortion," knowingly misrepresenting material

facts to courts in this District. His filings materially advanced the enterprise's obstruction of Plaintiff's access to the courts, and he is sued in his **individual capacity**.

5. Intercontinental Terminals Company LLC (ITC)

17.    **Intercontinental Terminals Company LLC (ITC)** incorporated the fraudulent Wharton County document and misrepresentations about Plaintiff's New York and Washington filings into its vexatious-litigant motion in federal court. When Plaintiff sought to enforce his **$1.137 million ITC Tier 1 settlement**, ITC filed a vexatious-litigant motion in Case No. **4:25-cv-02762**. ITC relied almost entirely on the misrepresented SDNY and Washington filings, as well as the void Wharton QSF documents created by Archer and BCA. ITC did not challenge the merits of the settlement enforcement claim but instead adopted the enterprise's fraudulent materials wholesale.

6. Legacy Community Health Services, Inc.

18.    **Legacy Community Health Services, Inc.**, through its attorneys, republished materials obtained from one or more of the listed Defendants to join in on the vexatious labelling of the Plaintiff and oppress his credibility in its own case while promoting a document wholly unrelated to the allegations made against it.

7. Katelin Cardenas

19.    **Katelin Cardenas**, an employee of Legacy Clinic, is sued in her individual capacity for her role in submitting documents of false assertions used to support the false vexatious narrative. Legacy Community Health and Katelin Cardenas, through its counsel Spencer Fane, filed a Sur-Reply (Doc. 57) containing: (a) false

factual statements; (b) and references to the same fraudulent materials used by Archer, BCA, and ITC. This filing was not an isolated error but a continuation of the same enterprise-driven misuse of Plaintiff's litigation history.

## 8. Spencer Fane LLP

20.    **Spencer Fane LLP via their attorneys** filed pleadings containing false representations, omitted material context, and republished documents used to defraud the court and impose the $100,000 security demand created by other members of the enterprise.

## 9. Colin Peter Goodman

21.    Attorneys Colin Peter Goodman and Elizabeth Dale Burrus authored and reviewed the Legacy Sur-Reply and other filings. They communicated with other enterprise members and relied on void documents and misrepresented litigation summaries produced by Archer and BCA. Their filings show intentional repetition of the same false narrative crafted by the other defendants.

## 10. Elizabeth Dale Burrus

22.    Attorneys Colin Peter Goodman and Elizabeth Dale Burrus authored and reviewed the Legacy Sur-Reply and other filings. [Dkt. 57 and 57-1] They communicated with other enterprise members and relied on void documents and misrepresented litigation summaries produced by Archer and BCA. Their filings show intentional repetition of the same false narrative crafted by the other defendants.

11. John Does 1–10

23.   **John Does 1–10** are individuals or entities who participated in the enterprise by creating, transmitting, publishing, or using fraudulent records or mischaracterized litigation summaries. Their identities will be added upon discovery.

## IV. FACTUAL BACKGROUND

### A. Overview of the Enterprise's Scheme

24.   The Defendants—attorneys, law firms, corporate entities, and individuals—formed an association-in-fact enterprise whose unified objective was to undermine Plaintiff's credibility, obstruct his access to courts, defeat his claims in multiple jurisdictions, and shield themselves and related parties from their individual liabilities. The enterprise accomplished this through the creation, dissemination, and repeated republication of fraudulent judicial documents; misrepresentations about Plaintiff's litigation history; obstruction of pending cases; coordinated filings containing false statements; and efforts to influence judicial proceedings across Texas, Washington, and New York.

25.   Central to the enterprise was the **fraudulent Wharton County vexatious-litigant "order"**—a document created **before a hearing occurred**, without jurisdiction, without the mandatory statutory prerequisites, and without any legal force. Despite being void and fabricated, these Defendants treated it as if valid and are actively weaponizing it across multiple courts.

26.   The enterprise's ongoing misconduct spanned over months, in multiple states, and multiple court systems. It involved deliberate coordination, shared objectives,

consistent methods of deception, and repeated acts furthering the same unlawful purposes—satisfying the RICO pattern requirements of *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239–40 (1989).

## B. Plaintiff's Underlying Claims and the Defendants' Motive

27.    Plaintiff previously brought valid claims against multiple actors for fraud, malpractice, breach, conversion, unlawful withholding of settlement funds, and other actionable harms. These claims threatened to expose misconduct committed by Brent Coon & Associates, Archer Systems, ITC, and others.

28.    Rather than defend against Plaintiff's allegations on the merits, Defendants adopted a coordinated strategy:

  (1) discredit Plaintiff as "vexatious,"
  (2) fabricate judicial records falsely labeling him as such,
  (3) create a litigation narrative painting Plaintiff as dishonest and abusive,
  (4) circulate these false records among courts and co-defendants, and
  (5) use these materials to preemptively defeat Plaintiff's filings.

29.    This strategy required the creation and circulation of fraudulent judicial documents that purported to be real court orders, starting from the 270th District Court in Harris county, transferred by recusal to the 334th District Court in Harris county, Tx until finally being sent to a settlement fund for adjudication. It required coordinated participation by multiple attorneys, court clerks and the judiciary each contributing to the false narrative and oppressive outcome.

## C. Creation of the Fraudulent Wharton County Order

30.   The Wharton County action was procedurally straightforward: Plaintiff filed claims seeking relief against Archer Systems LLC for its role in converting Plaintiff's settlement funds, fraudulently inducing Plaintiff into a Tier category hundreds of thousands of dollars less than what he is owed and not only providing fraudulent information but creating it and sharing it with the others for them to use as well.

31.   Before any hearing (in Wharton), before statutory compliance, and before the court had jurisdiction to enter such an order, Defendant **Mary Elizondo Frazier** produced a document purporting to be a **signed vexatious-litigant order** dated **Sept. 26, 2025.**

32.   The ex parte hearing on the vexatious-litigant motion was scheduled for **September 26, 2025,** but the "order" was signed and published on Sept. 23rd in 2025.

33.   The Wharton County docket contained **no entry reflecting the issuance of an order on Sept. 26th,** nor could one appear there lawfully; but Defendants nevertheless circulated the document as if genuine.

34.   The record will show, Plaintiff filed a plea to the jurisdiction which, as a matter of law, had priority over any court action. The record will further show the court denied Plaintiff a telephonic or video appearance to his motion hearing and demanded he appear in person or his entire case against both Archer Systems LLC and Brent Coon and Associates would be dismissed. Placing an unexplained and undue burden on the Plaintiff who informed the court he had no transportation and could not appear in person in Wharton.

35.   Because the court lacked jurisdiction, because statutory elements were unmet, and because the order predates the hearing, the document is **void ab initio** under controlling Texas law.

36.   Plaintiff also challenges the appearance of the other defendants and needs discovery to determine whether or not anyone actually appeared before the court. Despite this, the document was transmitted, republished, attached, and incorporated into filings across multiple venues in Texas, transforming a fabricated instrument into a tool of obstruction.

## D. Dissemination and Weaponization of the Fraudulent Order

37.   After creation of the fraudulent order, Defendants acted cohesively to embed it into federal and state proceedings.

38.   **Archer Systems**, **Brent Coon & Associates**, **ITC**, **Spencer Fane**, **Legacy**, and **Cardenas** all relied on and republished exhibits used to obtain the fraudulent order or referenced or attached the fraudulent order—or falsely described its legal effect— to suggest Plaintiff had been judicially declared vexatious.

39.   Defendants then used this false premise to argue that Plaintiff's pleadings were frivolous, abusive, extortionate, lacking good faith, or intended to harass— assertions made with actual knowledge that the Wharton order was void.

40.   In multiple filings, Defendants portrayed Plaintiff as a vexatious litigant not because of his conduct, but because the enterprise required such a label to protect itself from liability.

## E. Role of Brent Coon & Associates and Attorney Ross Sears II

41.   **Brent Coon & Associates (BCA)** had a direct financial motive to undermine Plaintiff because Plaintiff's claims implicated BCA in conversion, fraud, negligence and the improper handling of settlement funds.

13

42.    Defendant **Ross Sears II**, acting as counsel for BCA, played a significant role in the enterprise. Sears filed:

    **a.** documents requesting sanctions accusing Plaintiff of abusing the courts;
    **b.** filings characterizing Plaintiff's claims as "frivolous," "nonsensical," or "malicious";
    **c.** documents asserting Plaintiff was engaged in "extortion," a knowingly false allegation;
    **d.** pleadings that lead to or supported the obtainment of the fraudulent Wharton document.

43.    Sears's filings were not independent advocacy—they were synchronized with the enterprise's broader objective of cutting off Plaintiff's access to judicial remedies and shielding BCA from liability.

44.    Sears's actions influenced judges, poisoned the judicial record, and aided other enterprise members by providing a false narrative of Plaintiff as a dishonest extortionist and a vexatious litigant. A label that eventually actualized.

45.    Sears acted with malice, reckless disregard for the truth, and knowledge that no lawful order had declared Plaintiff vexatious.

---

**F. Role of Spencer Fane LLP, Goodman, and Burrus**

46.    Attorneys **Colin Peter Goodman** and **Elizabeth Dale Burrus** of **Spencer Fane LLP** amplified the enterprise's fraudulent narrative in federal filings. Submitting as an exhibit documents 57 and 57-1. These documents have literally nothing at all to do with the allegations against its client. And adds no support to any defenses it raised in its pleadings.

47.   Documents 57 and 57-1 are the Plaintiff lawsuit filing against Archer System LLC, which was filed in the 270th District Court of Harris county in Texas.

48.   Any reasonable person of a sound mind would conclude these specific defendants were directly contacted by one or more of the others and told to incorporate these mischaracterizations into their defense. Because the documents were admitted before the Wharton Order was published two questions can be raised (1) were they told what the outcome would be before the order was signed and (2) were they told to say the same things, repeatedly, as the other defendants are doing.

49.   Either way, it is apparent; Spencer Fane and its attorneys acted with the same purpose as the other enterprise members: to obstruct Plaintiff's ability to prosecute his claims and to influence the Court's perception against him.

## G. Role of ITC

50.   **Intercontinental Terminals Company LLC (ITC)** would be the big distribution leg who incorporated the fraudulent Wharton document into its own vexatious-litigant motion in the Southern District of Texas in an effort to move this court to deny Plaintiff the court-ordered settlement amount it has refused to disburse.

51.   ITC also misrepresented Plaintiff's filings in New York and Washington, falsely asserting that those filings supported a finding of vexatiousness. It has, in fact admitted over 70+ documents matching the ones filed by Mary Frazier, Brent Coon and Associates and Archer Systems LLC.

52.   ITC's filings strengthened the enterprise's unified narrative and contributed to Plaintiff's reputational and procedural injury.

15

## H. Role of Legacy Community Health and Katelin Cardenas

53.    **Legacy Community Health** and **Katelin Cardenas** joined the enterprise by supplying a Federal Court with a document used by ITC, Archer Systems LLC and BCA to both obtain the fraudulent Wharton order and disseminate it..

54.    Their filings advanced the exact same enterprise-created falsehoods and contributed to the false narrative that Plaintiff's claims were abusive. Having no other attachment to the Motion to label Plaintiff vexatious – advanced by Mary Elizondo Frazier et al – the intent of participating in such endeavors are plausibly obvious. This was added to the exhibits in their case to use as a barrier against the Plaintiff in Federal court alongside its co-conspirators.

## I. Use of Interstate Channels to Further the Scheme

55.    Although the fraudulent Wharton document itself circulated within Texas, the enterprise's activities **used interstate email servers, CM/ECF systems, and multi-state court processes**—all of which satisfy RICO's interstate-commerce element.

56.    Defendants repeatedly referenced Plaintiff's litigation in:

   a. the Southern District of New York,
   b. King County Superior Court (Washington), and
   **c. multiple Texas courts.

57.    These references were not benign—they were used to falsely characterize Plaintiff's multi-jurisdictional litigation as abusive, forming part of the enterprise's defamatory narrative.

58.    As the Supreme Court explained in *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008), the use of interstate mails or wires in furtherance of a fraudulent

scheme is enough for RICO liability. Every Defendant's participation satisfies this requirement.

## J. Resulting Harm to Plaintiff

59.   The enterprise inflicted severe and ongoing harm on Plaintiff, including:

    a. reputational damage through defamation per se;

    b. obstruction of his lawsuits in three states;

    c. financial losses due to delays, dismissals, and improper orders;

    d. emotional distress, anxiety, and loss of trust in judicial institutions;

    e. the chilling of his constitutional right to access courts;

    f. active interference with enforcement of the $1.137 million settlement owed;

    g. damage to his credibility as a litigant;

    h. procedural disadvantages caused by the filing of fraudulent documents.

60.   Plaintiff continues to suffer ongoing damages because the fraudulent Wharton order remains in circulation, remains uncorrected in multiple court filings, and continues to be used to prejudice judges against him.

## K. Continuity of the Enterprise

61.   Defendants' acts:

    a. shared the same purpose (discrediting Plaintiff),

    b. used the same methods (fraudulent documents and false filings),

    c. involved the same participants,

    d. targeted the same victim,

    e. and were not isolated events.

62.    This conduct constitutes both **closed-ended continuity** (spanning many months) and **open-ended continuity** (still ongoing), satisfying the RICO pattern requirement.

---

## V. FIRST CAUSE OF ACTION — CIVIL RICO (18 U.S.C. §§ 1962(c) & 1962(d))

(Against All Defendants)

### A. Statutory Framework

63.    Under **18 U.S.C. § 1962(c)**, it is unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate... in the conduct of such enterprise's affairs through a pattern of racketeering activity."

64.    Under **18 U.S.C. § 1962(d)**, it is unlawful to conspire to violate § 1962(c).

65.    Plaintiff asserts claims under **18 U.S.C. § 1964(c)**, which provides a private right of action and authorizes recovery of **treble damages**:

"Any person injured in his business or property by reason of a violation of section 1962... shall recover threefold the damages he sustains."

---

### B. The RICO Enterprise

66.    The Defendants formed an **association-in-fact enterprise** consisting of:

(1) Archer Systems LLC,

(2) Brent Coon & Associates,

(3) Ross Sears II,

(4) Mary Elizondo Frazier,

(5) Spencer Fane LLP,

(6) Colin Peter Goodman,

(7) Elizabeth Dale Burrus,

(8) Legacy Community Health,

(9) Katelin Cardenas,

(10) ITC, and

(11) John Does 1–10.

67.    As defined in **Boyle v. United States, 556 U.S. 938, 946 (2009)**, an association-in-fact enterprise requires:

"a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."

68.    The enterprise's purpose was to:

   a. fabricate and circulate a fraudulent Wharton County vexatious-litigant order;
   b. disseminate false litigation narratives labeling Plaintiff vexatious, extortionate, dishonest, or frivolous;
   c. obstruct Plaintiff's access to judicial remedies in multiple jurisdictions;
   d. shield Defendants from liability for conversion, fraud, malpractice, and breach;
   e. manipulate federal and state judicial proceedings; and
   f. damage Plaintiff's credibility, reputation, and ability to litigate his claims.

69.    The enterprise had continuity, structure, shared methods, and coordinated conduct, easily satisfying **Boyle's** minimal structural requirements.

## C. Racketeering Activity — Predicate Acts

70.    Each Defendant committed multiple predicate acts under **18 U.S.C. § 1961(1)**, including:

## 1. Wire Fraud (18 U.S.C. § 1343)

71.    The Defendants used interstate email servers, interstate CM/ECF systems, and electronic communications to transmit:

   **a.** the fraudulent Wharton County vexatious-litigant "order";
   **b.** filings containing materially false statements;
   **c.** litigation summaries falsely describing Plaintiff's cases;
   **d.** defamatory accusations of extortion, frivolousness, or abuse;
   **e.** coordinated pleadings intended to obstruct Plaintiff's ongoing litigation.

72.    Under *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 647 (2008):

"The statute requires only a scheme to defraud and the use of the mails or wires in furtherance of the scheme; no more is required."
Reliance by Plaintiff is **not** required.

The Court's reasoning focused on the elements of the underlying criminal statute:

- **Statutory Text of Mail Fraud:** The federal mail fraud statute (18 U.S.C. § 1341) prohibits (1) having a scheme or artifice to defraud, and (2) using the mails "for the purpose of executing such scheme or artifice."
- **Absence of a "Reliance" Element:** The Court emphasized that the text of § 1341 contains **no requirement that any victim rely on a misrepresentation.** The focus is solely on the defendant's conduct: devising a scheme and using the mails to further it.
- **Separation of Criminal Act from Civil Remedy:** The Court refused to engraft common-law tort principles (like reliance) onto the criminal statute. The right

to a civil RICO action (18 U.S.C. § 1964(c)) is granted to "[a]ny person injured in his business or property by reason of a violation of [RICO]." The injury must be caused "by reason of" the violation—i.e., by the pattern of racketeering activity—not by reason of the plaintiff's personal reliance on a misrepresentation.

## 2. Mail Fraud (18 U.S.C. § 1341)

73.    Defendants sent filings, notices, and hard-copy materials through the mail as part of their coordinated dissemination of false documents.

## 3. Obstruction of Justice (18 U.S.C. § 1503)

74.    Defendants knowingly introduced fraudulent documents into judicial proceedings, obstructing federal and state courts with co-conspirators Archer Systems and BCA specifically naming the intended out of state target it sought to interfere with. This specified targeting lead to Plaintiff's Washington claim against Archer Mary and BCA which was also used in Wharton to obtain the Sept. 23rd Published order from the QSF administrator in Wharton County in the State of Texas.

75.    As the Supreme Court recognized in *United States v. Aguilar*, 515 U.S. 593, 598 (1995), §1503 applies where conduct has a "nexus" to a judicial proceeding and is undertaken with intent to obstruct.

- **Context:** The case involved a federal judge (Aguilar) who gave a warning to a wiretap target. The issue was whether his false statement to an FBI agent investigating a potential grand jury witness qualified as obstruction of justice under the "omnibus clause" of 18 U.S.C. § 1503.
- **The Supreme Court's Holding:** The Court reversed the conviction, holding that to violate § 1503, the obstructive act must have a **sufficient "nexus" to a pending judicial proceeding**. This means the act must have a relationship in

time, causation, or logic with the proceeding such that it has the **"natural and probable effect"** of interfering with it. The defendant must also have the **"intent to obstruct"** the due administration of justice.

- **Direct Quotation:** The Court stated: **"The action taken by the accused must be with an intent to influence judicial or grand jury proceedings; it is not enough that there be an intent to influence some ancillary proceeding, such as an investigation independent of the court's or grand jury's authority."** (515 U.S. at 599). The "nexus" requirement ensures the statute is not interpreted too broadly.

## 4. Witness Tampering (18 U.S.C. § 1512)

76.    Defendants engaged in conduct intended to influence, delay, or prevent Plaintiff's ability to give truthful testimony, submit sworn declarations, or provide evidence in federal proceedings. This included: (1) filing a fraudulent vexatious-litigant order to undermine the credibility of Plaintiff's sworn statements; (2) submitting false extortion accusations to intimidate Plaintiff into withholding testimony; and (3) threatening sanctions for the purpose of deterring Plaintiff from submitting affidavits and evidence. Plaintiff qualifies as a "witness" under § 1512 because he has provided, and is expected to provide, sworn testimony and declarations in the affected federal proceedings.

## 5. Retaliation Against a Party or Witness (18 U.S.C. § 1513)

77.    Sears's filings accusing Plaintiff of "extortion," and repeated coordinated attacks labeling him vexatious, were intended as retaliation for Plaintiff's exercise of his legal rights.

---

## D. Pattern of Racketeering Activity

78.    The enterprise's predicate acts satisfy both RICO requirements of **relatedness** and **continuity**.

79.    **Relatedness** is satisfied because the acts share the same purpose, same participants, same victims, and same methods, making them "interrelated by distinguishing characteristics." *H.J. Inc.*, 492 U.S. at 240.

80.    **Continuity** is satisfied because:

**Closed-ended continuity:** acts continued over multiple years across numerous jurisdictions.

**Open-ended continuity:** the harm is ongoing; fraudulent documents continue to be used; the enterprise's objectives remain active.

---

**E. Participation in the Conduct of the Enterprise's Affairs**

81.    Each Defendant "participated in the operation or management of the enterprise," satisfying **Reves v. Ernst & Young**, 507 U.S. 170, 179 (1993).

**Archer Systems LLC**

82.    Created, transmitted, and repeated false litigation summaries; circulated the fraudulent Wharton order; coordinated filings to discredit Plaintiff.

**Brent Coon & Associates and Ross Sears II**

83.    Sears filed:

   a. sanctions motions falsely labeling Plaintiff's filings frivolous;
   b. allegations of "extortion";
   c. his pleadings used to obtain the fraudulent order.

84.   Sears intended to influence judges and obstruct Plaintiff's access to the courts.

**Mary Elizondo Frazier**

85.   Authored and procured the fraudulent Wharton document before any hearing occurred; and disseminated the document as though valid. Mary Frazier is the progenitor of this operation having executed a similar act involving the Presiding judge for the State of Texas. One of the cases used in the obtainment of the Wharton order. A Rico claim as well, of the which Plaintiff intends to have the decision declared void for numerous reasons.

**Spencer Fane LLP, Goodman, and Burrus**

86.   After being offered an agreement to settle the matter of their involvement, intentionally chose to move forward with the coordinated efforts. These defendants are actively participating in the unlawful acts, brandishing exhibits supplied by the architects as if they were legal. Plaintiff specifically informed these defendants of the impossible dates related to the fraudulent Order resulting from the document they admitted into their specific case, in a separate unrelated action. But to no avail.

**ITC**

87.   Knowingly used the fraudulent Wharton document in a "joinder" supplied by BCA to support its vexatious-litigant motion; intentionally misrepresenting Plaintiff's filings in NY and WA to achieve its unlawful objective.

**Legacy and Cardenas**

88.   Submitted documents into its defense from a void ab initio order as a co-conspirator; joining the coordinated defamation scheme.

## F. Interstate Commerce Requirement

89.    The enterprise affected interstate commerce because:

    a. all electronic communications used interstate channels;

    b. Defendants referenced and exploited Plaintiff's **New York** and **Washington** filings;

    c. the enterprise sought to influence federal proceedings across multiple states;

    d. the wrongful acts impacted Plaintiff's legal rights in more than one jurisdiction.

90.    RICO requires only that the enterprise's activities *affect* interstate commerce; it does not require interstate transport of physical documents.

---

## G. Injury to Plaintiff's Business and Property

91.    Plaintiff suffered injury "by reason of" Defendants' RICO violations, as required by *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985), including:

    a. damage to litigation positions in three states;

    b. interference with a $1.137 million settlement;

    c. increased litigation expenses;

    d. reputational injury;

    e. obstruction of court access;

    f. lost economic opportunities;

    g. financial losses directly tied to Defendants' predicate acts.

92.    Plaintiff is therefore entitled to **treble damages** under § 1964(c).

---

## H. RICO Conspiracy (18 U.S.C. § 1962(d))

93.   Defendants knowingly agreed to participate in the enterprise's unlawful objectives.

94.   Each Defendant committed overt acts in furtherance of the conspiracy, including:

    **a.** creating fraudulent judicial documents;

    **b.** filing coordinated pleadings;

    **c.** disseminating false narratives;

    **d.** obstructing judicial proceedings;

    **e.** threatening sanctions or criminal accusations to deter Plaintiff.

    **f.** republishing defamatory materials;

    **g.** intimidating Plaintiff;

95.   Defendants are jointly and severally liable for all damages.

---

## VI. SECOND CAUSE OF ACTION — 42 U.S.C. § 1983

(Denial of Access to Courts; Deprivation of Due Process; Joint Action Under Color of State Law)

### A. Legal Framework

96.   Under **42 U.S.C. § 1983**, any person who, under color of state law, deprives another of rights secured by the Constitution is liable to the injured party.

97.   The Supreme Court has held that private individuals and entities act **under color of state law** when they are:

- **joint participants** with state officials (*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941–42 (1982));
- **willful collaborators** in the use of state procedures to accomplish unlawful objectives (*Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980));
- **invoking state power or state instruments in a corrupt or fraudulent manner**, thereby effectively acting "under color of law."

98.   The Due Process Clause prohibits state actors, including private actors acting jointly with the state, from:

- manufacturing judicial orders,
- misusing court procedures,
- presenting fabricated judicial documents, and
- obstructing meaningful access to the courts.

**B. Defendants Acted Under Color of State Law Through Joint Use and Misuse of State Judicial Processes**

99.   Defendant **Mary Elizondo Frazier**, a licensed Texas attorney, created and disseminated a **fraudulent Wharton County vexatious-litigant order** that was:

- dated before the hearing,
- never issued by a judge,
- never entered into the docket,
- jurisdictionally void, and
- used as if it were an official state order.

100.   Under *Dennis v. Sparks*, private parties who jointly engage with state judicial machinery—either through bribery, collusion, fraud, or corrupt misuse of court processes—act **under color of state law** for § 1983 purposes.

101.    The fraudulent Wharton County document was a **purported state judicial instrument**, and Defendants knowingly used it as such in multiple proceedings. This constitutes **joint action** and "significant aid" from state processes as defined in *Lugar*.

102.    By weaponizing a fabricated state order as though it were an authentic judicial decree, Defendants:

- acted jointly with the apparent authority of the State of Texas,
- misused state power,
- invoked state judicial authority to injure Plaintiff, and
- created legally actionable state action under § 1983.

---

## C. Denial of Access to the Courts

103.    The Supreme Court recognizes a constitutional right of **meaningful access to the courts**, protected by the First and Fourteenth Amendments. *Bounds v. Smith*, 430 U.S. 817 (1977); *Lewis v. Casey*, 518 U.S. 343 (1996).

104.    Defendants' coordinated use of a fraudulent judicial order, combined with coordinated false accusations and defamatory litigation narratives, obstructed and impaired Plaintiff's ability to:

- present his claims,
- be heard on the merits,
- provide evidence and sworn declarations,
- pursue his rights in Texas, Washington, and New York, and
- enforce a $1.137 million settlement.

105.   Under *Christopher v. Harbury*, 536 U.S. 403, 415 (2002), an access claim exists where defendants take official-style action that frustrates or blocks a litigant's ability to pursue a nonfrivolous legal claim.

106.   Defendants' conduct—including filing the fraudulent Wharton document in multiple courts—caused:

- dismissals or delays,
- judicial prejudice,
- denial of hearings,
- refusal to consider Plaintiff's evidence, and
- preemptive acceptance of Defendants' misrepresentations.

107.   Plaintiff suffered actual legal injury, including the loss or impairment of his claims and the inability to enforce legal rights.

## D. Deprivation of Procedural Due Process

108.   The Fourteenth Amendment prohibits deprivation of liberty or property without **due process of law**.

109.   By manufacturing a judicial order that never existed and using it as though it were a binding state decree, Defendants deprived Plaintiff of:

- fair notice,
- a hearing before deprivation,
- the right to respond to accusations,
- a neutral decisionmaker, and
- the ability to challenge the order as required by procedural due process.

110.    Defendants' coordinated misuse of the court system substituted falsified judicial authority in place of lawful procedures—an action squarely prohibited by due-process principles.

111.    No legitimate state process authorizes:

- judicial orders published 3 days before the scheduled hearing,
- fabricated orders not entered into a docket,
- republishing void documents as valid,
- using said falsified orders to influence other courts.

112.    Defendants' conduct therefore constitutes **state action** that deprived Plaintiff of liberty and property interests without due process.

---

## E. Joint Action of All Defendants

113.    Under *Lugar*, private actors become state actors where their conduct is:

- "fairly attributable to the State," and
- dependent on the misuse of state procedures.

114.    Defendants jointly acted under color of law because they:

a. used a fraudulent state judicial instrument as the centerpiece of their scheme;

b. invoked state authority to label Plaintiff vexatious;

c. relied on the appearance of state power to obstruct Plaintiff's rights;

d. conspired with one another to weaponize state judicial processes;

e. knowingly republished a void document as an operative state order.

115.    Even though many Defendants are private entities, their concerted action with a purported judicial order satisfies the "joint participation" doctrine.

116.    As stated in *Dennis v. Sparks*, § 1983 liability applies even where the state judge was not part of the conspiracy—the private actors are still liable for invoking state power corruptly.

## F. Damages

117.    As a direct and proximate result of Defendants' joint action and constitutional violations, Plaintiff suffered:

- obstruction of his ability to litigate;
- financial losses;
- reputational injury;
- lost procedural advantages;
- denial of a meaningful opportunity to pursue claims;
- impairment of his ability to enforce the $1.137 million owed;
- emotional and psychological distress;
- ongoing prejudice in active litigation.

118.    Plaintiff seeks compensatory and punitive damages under 42 U.S.C. § 1983 and § 1988, jointly and severally against all Defendants.

## VII. THIRD CAUSE OF ACTION — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(Against All Defendants)

## A. Legal Standard

119.    Under Texas law, Intentional Infliction of Emotional Distress (IIED) requires proof that:

(1) the defendant acted intentionally or recklessly;

(2) the conduct was extreme and outrageous;

(3) the conduct caused the plaintiff emotional distress; and

(4) the resulting emotional distress was severe.

See *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993).

120.    Extreme and outrageous conduct is conduct "so atrocious that it surpasses all bounds of decency and is utterly intolerable in a civilized community." *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999).

121.    Although IIED is generally a "gap-filler" claim, it is appropriate where, as here, emotional injuries arise from a **unique combination** of fraudulent judicial manipulation, coordinated defamation, retaliatory filings, and the fabrication of state judicial documents—conduct so extreme that no other tort fully captures its emotional impact.

## B. Extreme and Outrageous Conduct

122.    Defendants engaged in conduct that no reasonable person could regard as acceptable, including:

a. fabricating a judicial order and circulating it as though genuine;

b. using the fraudulent order to undermine Plaintiff's credibility in multiple courts;

c. falsely accusing Plaintiff of criminal conduct ("extortion") without any factual basis;

d. coordinating filings across jurisdictions to depict Plaintiff as vexatious or

dishonest;

e. obstructing Plaintiff's access to courts through falsehoods, misrepresentations, and prejudicial narratives;

f. misusing state judicial authority to intimidate Plaintiff;

g. weaponizing legal procedures to emotionally punish, overwhelm, and destabilize Plaintiff;

h. leveraging the appearance of state power to legitimize fraudulent attacks on Plaintiff's character and integrity.

123.    This conduct was intentional, reckless, malicious, and carried out with full knowledge that it would cause Plaintiff emotional trauma.

124.    Defendants' actions were coordinated, prolonged, and deliberately injurious— exceeding all bounds of human decency and amounting to extreme and outrageous behavior under Texas law.

## C. Intent or Reckless Disregard

125.    Defendants acted with intent to cause emotional harm, or with reckless disregard of the severe emotional impact their misconduct would predictably inflict.

126.    By manufacturing a fraudulent judicial order, repeating defamatory narratives, and using the judicial system as a weapon, Defendants anticipated and intended the emotional distress Plaintiff would experience from being falsely branded vexatious, dishonest, or criminal.

127.    Defendants also intended to break Plaintiff psychologically so he would abandon his litigation efforts, knowing Plaintiff is a self-represented litigant without institutional power to counter coordinated attacks.

## D. Severe Emotional Distress

128.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered **severe emotional distress**, including:

- anxiety, humiliation, and mental anguish;
- loss of sleep and constant fear of further retaliatory filings;
- depression and emotional suffering tied to the destruction of his reputation;
- stress caused by retaliatory use of the legal system;
- fear of judicial prejudice due to Defendants' fraudulent narratives;
- emotional exhaustion from years of coordinated attacks across multiple courts.

129.    Plaintiff's distress is not trivial or fleeting. It is intense, persistent, and directly caused by Defendants' repeated, malicious, and coordinated misconduct.

130.    The severity of Plaintiff's distress is amplified by the unique circumstances of Defendants' actions—specifically, their use of *fraudulent judicial authority* to label Plaintiff dishonest and vexatious and to justify hostile judicial treatment.

---

## E. Causation

131.    The extreme and outrageous conduct of Defendants was the direct, producing, and proximate cause of Plaintiff's emotional injuries.

132.    No intervening or superseding cause contributed to the harm; it resulted strictly from Defendants' intentional and reckless misconduct.

---

## F. Damages